This is the First District Second Division Appellate Court. Justices Aurelia Puchinsky, myself, Justice Smith, and Justice Cynthia Cobb. The procedure we will follow is first the appellant and we let you argue your case. We don't interrupt. We ask questions after you're presentation, then the appellee, the same, and then the appellant. This is the case of People v. William Bell, 18-08-9-0. You may proceed. Thank you. May it please the court and counsel. I'll ask, I don't know if you're following the traditional timing rules, but I'll ask for 15 minutes. I don't think I'll need all of it. And then five minutes in rebuttal. All right. William Bell was convicted of aggravated fleeing and eluding a Class 4 felony based on his disobedience of two or more official traffic control devices. At issue is whether the state proved that Bell violated a second official traffic control device within the meaning of the statute. Bell argues that he did not willfully disobey the second traffic control device, which the state identified as a one-way sign located on the southwest corner of West 80th Street and South Harvard Avenue. In the dash cam footage, this second sign appears at about 532. Bell was traveling the wrong way southbound down South Harvard Avenue. When he got to the intersection of West 80th Street, he turned the wrong way headed east down 80th. Based on the video submitted by the state at trial and the testimony of Officer Schultz, Bell could not have disobeyed this one-way sign because it was facing traffic headed properly westbound on West 80th and not as the state claims facing northbound. This is supported by both Officer Schultz's identification of the location of the sign on the map and the dash cam video. We only even know about this second sign because Schultz made a right-hand U-turn into the intersection of West 80th Street and South Harvard facing west or the direction of travel of West 80th Street. That the one-way sign was facing west and not north is also supported by a common sense rules of the road. Any municipality would not erect a one-way sign for traffic headed in the wrong direction on South Harvard. For example, if you look at the dash cam footage, when Officer Schultz traveling south reached the intersection of South Harvard and West 80th Street, he did not encounter a stop sign because South Harvard Street is a one-way street going north and a stop sign facing southbound would contradict the fact that drivers are only supposed to head northbound on facing northbound and that to the extent there is any dispute, it should be viewed in a light most favorable to the state. First, Officer Schultz did not testify that the sign was facing bell. He identified its location. At most, I think on in the transcript at page 283 and 284, he said that the sign was on West 80th Street. The best evidence that we have of this one-way sign is the dash cam video. And notably, when the state could not initially locate the video, defense counsel filed a pre-trial motion in limine based on people v. Clattis. As noted in that motion and in Clattis, in traffic cases, the policy is to record traffic stops to aid in the truth-seeking function and provide objective evidence. To that end, this case isn't like dispute that can be resolved with references to Schultz's testimony. The court can view this video without deference as it is non-testimonial evidence that's supported by Shaw, by Dixon, which I cited in the opening brief, and even by the Illinois Supreme Court case that Dixon relies upon, Radojec. And to the extent that I included the Google Maps photo of the one-way sign, it provides just a daytime view of the same evidence that the state relies on. And this court can and should take judicial notice of it. It's not new evidence. The location of that photo is based on the identification of the location of the one-way sign by the state's own witness. It's generally known. It's capable of accurate and ready determination by sources whose accuracy cannot reasonably question. And there's really no debate that it's the same sign. The Google Maps link makes it clear that the sign is not facing northbound towards Harvard, as again, this would be contrary to common sense rules of the road in the dash cam video, but westbound to alert traffic crossing the intersection of West 80th. And for these reasons, and for those in the brief, we would ask this court to reduce Bell's conviction to misdemeanor fleeing and eluding. Marcy. Oh, I can't forget. Any questions? I have no questions. All right, you may proceed. Good morning, may it please the court. I do want to first touch on defendant's initial claim that the issue here, whether defendant willfully disobeyed the sign is not a factual dispute. Of course it is. This is far different from the case defendant cited people versus Smith, where the Supreme Court was actually tasked with construing the meaning of a term from the statute, otherwise armed from the armed violence statute. Defendant here isn't alleging that there's any ambiguity in any of the particular terms. It's not asking this court to interpret the word willful. What it is asking this court to do is to look at the factual circumstances surrounding defendant's act, the direction he was traveling down Harvard, the direction he turned once he reached 80th street, which street the sign was meant to direct drivers was one way. Those are all factual circumstances he's asking you to look at which require factual inferences, which is why this issue is undoubtedly a question of fact. Now curiously in arguing that he did not willfully disobey the sign, defendant claims on one hand that the sign was not meant to direct drivers coming westbound. I'm sorry that the sign was meant to direct drivers coming westbound down 80th street, that Harvard was a northbound street. So according to him, it would have only been visible to drivers headed westbound on 80th street. However, on the other hand, defendant also argued on page 16 of his brief, that he actually obeyed the sign by turning off of Harvard when he realized he was going the wrong way down Harvard. So of course, this is an to him as he was approaching on 80th street. But either way, whether he saw the sign indicating 80th street was one way going west, and whether he willfully disobeyed it, that was the very task the jury was asked to determine. And the jury did so very conscientiously here, considering the officer's testimony, reviewing the dash cam video several times during its deliberations, looking at the stills. And also, I want to bring to the court's attention that the defense attorney point blank argued to the jury, the state failed to prove beyond a reasonable doubt that there were two traffic control devices. He told them to watch the video again during deliberations, and to note that the video is from the perspective of officer Schultz during the pursuit as it occurred that night, and that the jury would not see two traffic control signals. Nonetheless, after considering all of the evidence and the defense counsel's argument, all 12 of the jurors agreed that defendant would have seen the sign indicating 80th street was going one way west, and he willfully disobeyed it. And of course, now that evidence must be viewed in the light most favorable to the prosecution. Instead, defendant wants this court to reweigh the evidence that those jurors carefully reviewed, and to do so with evidence that was not even presented to them, the Google photo. As we stated in our brief, no court of review in Illinois has ever taken judicial notice of a Google Street View snapshot. And this makes sense because, of course, appellate courts, courts of review have no way of knowing if the snapshot accurately represents what it purports to represent at the critical time at issue, which is why it's axiomatic that when to establish a proper foundation for admission of a photograph and evidence at trial, the question is always asked, does this photo accurately represent how the scene appeared at the time of the crime, for instance. Now here we know that the October 2015 Google photo does not accurately represent how the sign appeared. The state argued, pointed out in its brief, that the Google photo, in the Google photo, the sign actually appeared to be somewhat on an angle. But while the sign in the video, and in the stills that was presented to the jury, the sign appeared to be facing north, which of course was the direction in which defendant would have seen the sign as he was coming down Harvard. Again, defendant claims that the sign, point blank claims that the sign was facing west. The sign was not facing west. We all have the exhibits. The sign was facing north. Regardless of whether it was good urban planning or not, this is where they chose to put the sign. This is where they put the sign. It was facing north. He should have seen the sign. And this is a perfect example that illustrates why such a photo, so a Google snapshot that was not considered by the triage of fact should not now be used to relitigate the issue on appeal, as this court recently found in Perez. And just to distinguish, just to make it clear, Perez did not overrule People v. Clark, which said that judicial notice can be taken of a geographical fact on a map. A map is different than a snapshot of things like a park, which is a permanent landmark, as opposed to a temporary movable object such as a street sign. So we do ask that this court reject defendant's invitation to have it substitute its judgment with the 12 triers of fact and to reweigh the evidence with evidence the jury never even saw. And we submit that the defendant did fail to meet his burden to show that no rational trier of fact could have found that he willfully disobeyed the sign, especially when the evidence is viewed in the light most favorable to the people, and we ask the state affirm his conviction. Thank you. Questions? I have one. Uh, the dash cam video you would argue is reliable. We may rely on that, may we? Yes, you may. All right. That's my only question. All right. Rachel. Thank you. Just a few comments. In terms of the standard of review, I think, you know, what I'm asking is for this court to consider, is it enough to point to just a traffic control device for the purposes of finding him guilty of the class four felony, or does the state actually have to present evidence that he could see the sign? Now, leaving aside the issue of the Google map, the best evidence that we have of the sign is the dash cam video. I would argue that that dash cam video shows that this sign is facing traffic headed west on West Avia. That's my argument. I think that's consistent with common sense. You know, I would also note that the statute, the Illinois statute involving official traffic control devices relies on the national committee that prepares the manual on uniform traffic control devices. It's in the committee comment to the statute. The statute's in the statute section of my brief. And that manual, to the extent you're interested, says that when you're placing one-way signs at an intersection involving a one-way street, you put it on the far left corner and you put it in the near right corner. And so consistent with that manual, if you're going westbound on West Avia, there'd be, you know, a one-way sign representing Harvard on the far left corner and on the near right corner. And so I think, you know, the issue as a matter of law is, does the state have to prove it? And then the issue is, did they do it in this case? And I would say, you know, you can't point to Officer Schultz's testimony and say, yeah, Bell saw that sign when he was going in the wrong direction. And the idea that, you know, the municipality would somehow put a one-way street for traffic going the wrong way down South Harvard, I think is just not a fair inference from any of this evidence or from our common sense. I mean, there's just no evidence that they would violate, you know, traditional rules of the road and put a one-way sign any more as I indicated, they would put a stop sign, you know, for traffic going the wrong direction. It's just not, it's just not consistent with common sense or with the rules of the road. And so, you know, I would say that the state just didn't present the evidence that it needed to in order to sustain a class four felony. I mean, the client got almost a three-year sentence in this case based on blurry dash cam video. And as far as what was argued in the jury, no, I think the jury just got it wrong. I mean, they're not, this is a very specific statute. It requires the state to prove very specific things about what the police officer did, whether he had his lights activated, and it requires disobedience, willful disobedience of two traffic devices. And I really don't think you can prove willfulness by just pointing to any traffic control device, any more than I think it was a fair inference to say, you know, the traffic is, you can see cars going the wrong direction, therefore he violated the statutory section. No, it requires proof of two official traffic control devices. As far as what's on page 16 in the brief, I mean, that's just, that's just an observation. I don't think it's admonition, but it supports the argument that the one-way sign is facing traffic going westbound on West Adia. So for the same reasons, I would ask the court to reduce Mr. Bell's conviction to class A's demeanor. Any questions? I have none. No. All right. Thank you very much. You both had very nice briefs and you're precise and to the point. So we got through this quite easily. I thank you. Stay warm.